*Jeffrey D. Hill v. New Castle County, et al.*
C. A. No. 07-228 (GMS)
Plaintiff's Answering Brief In Opposition Of Defendants' Motion For Summary Judgment

# APPENDIX B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY D. HILL, | : | |
| | : | C. A. No. 07-228 (GMS) |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| NEW CASTLE COUNTY, a municipal | : | |
| corporation, SGT. ANDREA HYDEN, | : | |
| in her individual capacity, CAPT. MARK | : | |
| HITCH in his individual capacity, and | : | |
| CAPT. QUINTON WATSON, in his | : | |
| individual capacity, | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFF'S AFFIDAVIT

I, **JEFFREY D. HILL,** being duly sworn according to law, depose and state that that the information contained herein is based on my own personal knowledge, information and belief and is true and correct:

1.    I am the Plaintiff in the above-captioned action.

2.    I have reviewed Plaintiff's Answering Brief.  The Statement of Facts in the Answering Brief is true and accurate to the best of my knowledge.

3.    The Patrol Unit is a unit within the New Castle County Police Department where officers fresh out of the Police Academy typically begin their employment and a unit from which many of the New Castle County Police Department strive to be transferred because officers assigned thereto must work various shifts, suffer other disruptions to their schedules and endure higher stress levels.

4.     In April 2002, after approximately nine years in the Patrol Unit, and after applying for a transfer to the Mounted Unit virtually every one of those nine years, I was awarded a transfer to the Mounted Unit upon the recommendation of Captain (then Lieutenant) Elmer Settings.

5.     The officers in the Mounted Unit work on horseback, get to interact and work with animals on a regular basis, make various public relations appearances, appear in parades, participate in photo shoots, compete in horseback competitions, work primarily day shift, and in general are held in high esteem by other police officers not employed in the Mounted Unit.

6.     Throughout my tenure with the Mounted Unit, Corporal Darla Hoff received more favorable treatment from the commanding officer of the Mounted Unit, Defendant Andrea Hyden, than did I or any of the other male officers in the Mounted Unit.

7.     A serious injury to one of the Mounted Unit officers may impede that officer's ability to work on horseback and may require that the injured officer be transferred out of the Mounted Unit if such an injury is sustained.

8.     Sgt. Hyden did not verbally reprimand Cpl. Hoff in front of the other members of the Unit.

9.     Sgt Hyden asked me Hill to relay mail to Capt. Settings' office at the main headquarters for the NCCPD. I was unaware of where Capt. Settings' office was located and asked Sgt. Hyden for the location. Sgt. Hyden responded "you should know; you spend enough time under his desk." Sgt Hyden's statement implied that I performed oral sex on Capt. Settings in order to receive favorable treatment from Capt. Settings.

10.    In July, 2005, Sgt. Hyden left for vacation and named Cpl. Hoff, a female officer with less seniority than me, as acting Sergeant. No explanation was ever given to me as to why I was passed over to serve as acting sergeant.

11.    In October, 2005, Sgt. Hyden was upset that a male officer with significantly much less experience riding and showing horses had scored higher than she at the competition.

12.    When Sgt. Hyden reprimanded me, claiming that a portion of my horse's sheath was dirty, I responded that the dirty sheath must have been an oversight due to the numerous preparations for the competitions that were taking place. I was by this reprimand and reminded Sgt. Hyden that I had won this particular potion of the competition (the uniform and mounted phases).

13.    When I asked Sgt. Hyden what she meant by her statement, "That's strike two," she replied, "You saw what happened to Doc." I believed her statement to be a very thinly veiled threat to have me removed from the Mounted Unit.

14.    I believed that Sgt. Hyden was treating me unfairly and creating a hostile work environment.

15.    I requested the reason I was being transferred from the Mounted Patrol but neither Captain Hitch nor Captain Watson responded to my request.

16.    During the second and third step hearings, I discovered that a portion of my complaint had not been investigated and Sgt. Hyden had made several false statements during the investigation.

17.    In April 2006, I was told that the comment by Sgt. Hyden regarding me spending time under Capt. Settings' desk would be investigated.

3

18.    The first false statement made by Sgt. Hyden during the investigation was her denial of any involvement in my transfer. However, during the 2nd Step Grievance Hearing Capt. Hitch testified that Sgt. Hyden had, in fact, personally requested my transfer out of the unit.

19.    The radar calibration incident was the first instance of discrimination by Sgt. Hyden. At the time, I did not even recognize this first discriminatory act as discriminatory. It was not until after Sgt. Hyden took subsequent discriminatory actions against me that I began to realize I was being discriminated against.

_____
**JEFFREY D. HILL**

**STATE OF DELAWARE**    )
                          ) SS.
**NEW CASTLE COUNTY**    )

This instrument was acknowledged before me, a Notary Public, on July 29, 2008.

_____(SEAL)
Notary Public
My commission expires: 10/26/10

JILLYNN C. DELLOSO
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Oct. 26, 2010

4